ELEANOR B. SANTRY *vs.* ELIZABETH FROST FRANCE.

Middlesex.    February 5, 6, 1951. — March 7, 1951.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Unsound Mind.    Probate Court*, Jury issues.

Upon a contest of the alleged will of a man eighty-four years old at the time of its execution shortly before his death, an order by the Probate Court framing an issue as to soundness of mind was not erroneous on statements of expected evidence and testimony showing, among other things, mental deterioration and senility of the decedent, an apoplectic shock suffered by him and the appointment of a conservator for him, although the provisions of the alleged will were natural in the circumstances.

PETITION, filed in the Probate Court for the county of Middlesex on December 14, 1949, for proof of the will of Albion C. Taylor, late of Lowell.

The petitioner appealed from an order by *McMenimen, J.,* framing a jury issue.

*J. P. Cassidy,* (*G. N. Moushegian* with him,) for the petitioner.

*J. C. Johnston,* for the contestant.

LUMMUS, J. On a motion to frame issues for trial by jury in the matter of the probate of an alleged will of Albion C. Taylor, late of Lowell, the Probate Court framed the following issue: "Was said Albion C. Taylor of sound mind at the time of the execution of the instrument which is now propounded as his last will?" Eleanor B. Santry, the person named as executrix, appealed.

Albion C. Taylor was born on June 6, 1865, and died on December 9, 1949, leaving as heirs three first cousins living in New Jersey. They included the appellee, and he had no acquaintance with any of them. His alleged will, dated September 24, 1949, when he was eighty-four years old, gave all his property to George F. Santry and Eleanor B. Santry, who are husband and wife. The motion to frame issues was heard on statements of counsel as to their expected evidence, without any testimony except that of a nurse named Esther J. Goldman. *Cook* v. *Mosher,* 243 Mass. 149, 152, 153. *Beal* v. *Davis,* 251 Mass. 175. *Cranston* v. *Hallock,* 281 Mass. 182.

The classic statement of the mental soundness which a testator must have is that contained in the charge of Mr. Justice Charles Allen in *Whitney* v. *Twombly,* 136 Mass. 145, 146, 147, quoted in *Ronan* v. *Moroney,* 313 Mass. 475, 477, 478, and recently confirmed and restated in *Goddard* v. *Dupree,* 322 Mass. 247, 250, in these words: "Testamentary capacity requires ability on the part of the testator to understand and carry in mind, in a general way, the nature and situation of his property and his relations to those persons who would naturally have some claim to his remembrance. It requires freedom from delusion which is the effect of

disease or weakness and which might influence the disposi-
tion of his property. And it requires ability at the time of
execution of the alleged will to comprehend the nature of
the act of making a will."

The deceased was unmarried. He was an intelligent and
successful man of business. The Santrys were much younger
than he, but were intimate friends, and performed valuable
services for him in his business affairs. The will was a
natural one for him to make, and it is hard to believe that
he intended to give anything to his heirs. Nevertheless the
burden was on the. proponent of the will to satisfy the
tribunal of fact by a fair preponderance of the evidence
that the deceased was of sound mind and testamentary
capacity when the instrument was executed. *Claffey* v.
*Fenelon*, 263 Mass. 427, 430. *Goddard* v. *Dupree*, 322 Mass.
247. The presumption of sanity has effect only until evi-
dence of want of capacity appears. *McLoughlin* v. *Sheehan*,
250 Mass. 132, 137. See also *Epstein* v. *Boston Housing
Authority*, 317 Mass. 297, 302.

In the winter of 1948, when the deceased was living with
another old man in Lowell, he fell in the snow during a
blizzard, and was helped into the house by neighbors, who
put him to bed. The upper story of the house was not
heated except by the heat from a gas oven in the lower
story. The house was dirty and disorderly. After that
experience, his mind began to deteriorate. He went about
with his trousers unbuttoned. He limped, and his leg be-
gan to turn black. A physician sent him to a hospital on
January 20, 1949. His body was in a filthy condition, with
dirt encrusted on it. In the hospital he was senile, irrational
and incoherent. He asked that notice of his condition be
given to his parents, who had been dead for many years.
On January 26, 1949, his leg was amputated below the knee.
On February 2, 1949, he had an apoplectic shock. The
Santrys then engaged a lawyer, who prepared a petition for
conservatorship on the grounds of advanced age and mental
weakness, supported by the certificate of a physician who
is one of the attesting witnesses. The appointment was

made, Eleanor B. Santry being appointed. The appointment of a conservator has a tendency to show weakness of mind. *Clifford* v. *Taylor,* 204 Mass. 358, 360, 361. The mental condition of the deceased became worse from January to June, 1949. The same physician gave orders that the deceased was not to be allowed to sign any legal paper without the approval of the hospital alienist.

In June, 1949, the deceased left the hospital and was taken to his house. Two nurses went with him. The Santrys went there to live. During the summer his condition was improved. But on September 12, 1949, he became worse. On September 24, 1949, the Santrys and a lawyer sent for by them went into his room and closed the door. The lawyer prepared the will. The lawyer signed it with the name of the deceased, certifying that he did so in the presence of and at the direction of the deceased. Moreover, someone held the hand of the deceased and made a cross on the will. The attesting witnesses were two nurses, Xanthe Mangiavas and Esther J. Goldman, and the physician, Walter L. Twarog.

The physician, though not an alienist, is expected to testify that the deceased was of testamentary capacity, notwithstanding acts of the physician hereinbefore narrated having a tendency the other way. Esther J. Goldman has signed a statement that the deceased "was mentally incapacitated from the time he entered the hospital until the time of his death," but she is now expected to testify for the proponent.

A jury issue should be framed when the judge is satisfied that there is "a real and true question of fact to be tried supported by evidence of a substantial nature." *Fuller* v. *Sylvia,* 240 Mass. 49, 53. *Cranston* v. *Hallock,* 281 Mass. 182, 184. *LeBlanc* v. *Coombes,* 325 Mass. 431, 432. The framing of issues involves an exercise of discretion and judgment, and weight is given to the action of the judge. *Cook* v. *Mosher,* 243 Mass. 149, 153. *McMann* v. *Murphy,* 259 Mass. 397. *Briggs* v. *Weston,* 294 Mass. 452, 454.

*Hannon* v. *Gorman*, 296 Mass. 437, 438. *Mitchell* v. *McLaughlin*, 310 Mass. 41, 44. We cannot say that the discretion of the judge was wrongly exercised in framing the issue as to the mental capacity of the deceased.

*Order framing issue to jury affirmed.*