KATHLEEN S. WIMBERLY & another[1] *vs.* PHILIP T. JONES. No. 87-932.

August 8, 1988. *Probate Court*, Parties, Standing, Appeal. *Will*, Allowance, Framing of jury issues, Testamentary capacity. *Practice, Civil*, Affidavit.

Ellen P. Dutra (the decedent) died on January 23, 1987. She executed on Sunday, December 21, 1986, a handwritten purported will (the 1986 instrument), at least witnessed by her attorney, Mr. Philip T. Jones, the petitioner for probate of the document. This was the day before the decedent was to undergo (and did undergo) an operation for colon cancer.

The 1986 instrument left all the decedent's property to Mr. Jones as trustee, in trust to permit her husband, Manuel, to live rent free (and with all expenses paid) in her house in Randolph during his life "so long as he is able to take care of himself in the property and desires to live" there. The house was to be sold after the death of Manuel "or when he is no longer able to live in the property." The trust was to terminate on Manuel's

---

[1] Mrs. Wimberly was a niece of the decedent and a contestant of the allowance of the will. Her brother Terrence O'Sullivan was a nephew, and also a contestant.

death. Then the trust property was to be distributed among various legatees.[2]

Mr. Jones offered the 1986 instrument for probate on February 3, 1987. Kathleen S. Wimberly and her brother (the contestants) caused appearances by counsel to be filed for them in opposition to the allowance of the will on March 9, 1987. An affidavit by Mrs. Wimberly was filed on April 9, 1987.

Mrs. Wimberly's affidavit states in effect that the contestants were to have taken a significantly larger share under an earlier will executed in 1983, that the Randolph real estate had been in their family for two generations, that Mrs. Wimberly and the decedent had always had a close and loving relationship, and that Mrs. Wimberly and her family had spent a week in July, 1986, with the decedent and her husband in Randolph, only a few months before the decedent executed the 1986 instrument. The only statement in Mrs. Wimberly's affidavit directly bearing upon the decedent's testamentary capacity on December 21, 1986, was an unsupported conclusion, viz., "[t]hat my . . . aunt was not of sound and disposing mind at the time she executed the . . . [1986 instrument] due to the fact that she was to undergo a life-endangering operation the next day."[3]

On April 15, 1987, Mr. Jones, as petitioner, moved to strike the contestants' objections to the allowance of the will and their appearances on the grounds (1) that the affidavit filed by Mrs. Wimberly was not that of Terrence O'Sullivan who filed no affidavit (and thus was not in compliance with revised Probate Court Rule 16 [1987]),[4] and (2) that Mrs. Wimberly's affidavit "fails to state specific facts and grounds upon which the objection is based as required by [Probate] Rule 16(a) and it, along with the appearance

[2] One neighbor's family was to receive a strip of land twenty feet wide. The two contestants, mentioned below, were each to receive a legacy of $10,000. Four named legatees, not shown to be relatives, were each to receive $25,000. The decedent's brother-in-law and sister-in-law each received a legacy of $5,000. The residue was to be distributed in equal shares to eight religious groups or secular charities.

[3] Mrs. Wimberly's affidavit, as the contestants' brief admits, "did not allege specific facts which would rebut the presumption of sound mind. That [so the brief asserts] was because the . . . [contestants] did not possess specific facts which would rebut the presumption at that time." The contestants merely assert that "they did not have an opportunity to observe their aunt at the time that she executed the will," and consequently "about all that they could allege was what they did allege." Nothing in the affidavit suggests that the contestants or their attorney were in any way prevented from talking with the decedent's husband, doctors, hospital attendants, neighbors, and others about the decedent's condition. There was no statement in the affidavit of any observations of the decedent in July, 1986 (when they visited her), which might indicate lack of testamentary capacity.

[4] Probate Court Rule 16, was amended, effective January 2, 1987, to take account of St. 1986, c. 211, § 1, which abolished jury issues in Probate Court proceedings by the repeal of G. L. c. 215, § 16, as it then read. The pertinent portions of the rule as it now stands are set out in the appendix to this opinion.

of both . . .. [contestants], should be [struck] pursuant to [Probate] Rule 16(b)." The motion was allowed on May 21, 1987, but was stayed for ten days so that the contestants could prosecute an appeal. Such an appeal was claimed.

Mr. Jones correctly does not dispute that the contestants have "standing" to file objections to the allowance of the 1986 instrument as the decedent's will. They each were next of kin of the decedent, and they had been mentioned more favorably in a prior will than in the 1986 instrument. See cases cited in *Sheldone* v. *Marino,* 398 Mass. 817, 818-820 & n.1 (1986), to the effect that such an interest constitutes a property right (even if a fragile one). See especially, e.g., *Crowell* v. *Davis,* 233 Mass. 136, 138-140 (1919). He contends only that the contestants were required to make their case "in conformity with the rules of the Probate Court" promulgated under the broad rule making powers of the Probate Court and the Supreme Judicial Court. G. L. c. 215, §§ 30, 31.

Under the pre-1986 rules and decisions concerning the framing of jury issues in connection with will contests, if the contestants had offered to prove all the facts stated in Mrs. Wimberly's affidavit, jury issues would have been denied. See the cases collected in 1 Newhall, Settlement of Estates §§ 39-43 (4th ed. & Supp. 1987). See also *Fuller* v. *Sylvia,* 240 Mass. 49, 53 (1921), stating that the "mere request for the framing of [jury] issues is not enough, without the presentation of facts on which to found a reasonable hope for a result favorable to the party requesting the framing of issues." The present rule 16 merely requires contestants with standing to state in *verified* form the "specific facts and grounds upon which . . . [the] objection is based," a requirement which is no more burdensome than court rules in other areas of the law requiring a plaintiff to assert with specificity in his complaint (or other pleading) allegations which, if proved, would entitle him to prevail.

The motion to strike the affidavit was allowed "[a]fter hearing," but the record appendix does not contain any transcript of what took place at that hearing or what, if any, offers of proof then were made. The Probate Court docket reveals no request for a "pretrial conference" under par. (c) of the present rule 16 or any request for leave to take a discovery deposition or depositions prior to the time allowed to the contestants for appearance, under S.J.C. Rule 1:02A, 382 Mass. 722 (1981) (even if such a request could be granted, a matter not necessary for us to decide).

The only issue presented by the contestants' objections on this record appears to be that of the decedent's testamentary capacity on December 21, 1986. No specific fact mentioned in Mrs. Wimberly's affidavit shows any lack of such capacity. Indeed, the 1986 instrument reveals on its face an orderly scheme of disposition and careful identification of each legatee with such legatee's address. We have been referred to no case which holds that the circumstance that a decedent was "to undergo a life-endangering operation the next day," by itself, constitutes an indication that the decedent thereby was deprived of soundness of mind.

We perceive nothing contrary to our view in the Federal cases relied on by the contestants. Of these the most recent is *Cleveland Bd. of Educ.* v. *Loudermill,* 470 U.S. 532, 538-548 (1985). The present rule 16 affords a contestant who states by affidavit facts, constituting (if established) a lack of testamentary capacity, more than adequate due process by the opportunity, given by the rule, to file an affidavit of those facts and a judicial hearing in applying the rule.

> *Order granting motion to strike*
> *affidavit of objections and the*
> *appearances of the contestants*
> *affirmed.*

### APPENDIX.

### "RULE 16 WILL CONTESTS [emphasis supplied].

"(a) If any person who has filed an appearance pursuant to General Probate Rule 2 on a petition for the probate of a will fails to file a written affidavit of objections to the petition, [X] *stating the specific facts and grounds upon which the objection is based,* within thirty (30) days after the return day (or such other time as *the court, on motion with notice to the petitioner,* may allow), *the court may,* upon its own motion or *on motion of the petitioner,* the guardian ad litem (if any), or any person whose appearance is on file (with notice to any person whose appearance is on file and, if applicable, the guardian and petitioner), *order the appearance struck.*

"(b) *If an affidavit of objections fails to comply with the requirements of* the foregoing *section (a), such affidavit of objections and the appearance of the party filing* such affidavit of objections may be struck on motion with notice in the manner provided in the foregoing section (a) *at any time after the filing of such affidavit* of objections.

"(c) Upon the filing of an affidavit of objections, the court or *any party may request a pretrial conference* to be held within thirty (30) days. The court at such pretrial conference may consider any of the matters enumerated in Rule 16 of the M.R.Civ.P. and may enter a pretrial order with respect to any one or more of such matters."

[Paragraph (d) is omitted as irrelevant in this matter.]

The prior history of rule 16 is stated in 1 Newhall, Settlement of Estates § 39 n.2, at 95 (Supp. 1987). The petitioner for allowance of the will suggests that the promulgation of Probate Court Rule 2A in 1982, the amendment of it in 1984 (by making more specific the language found in present rule 16[a] immediately following the letter X in brackets above), and the transfer of rule 2A in 1986 to rule 16 were in effect successive attempts by the Probate Courts, with the approval of the Supreme Judicial Court, to reduce

"the flow of frivolous will contests . . . causing delay in the administration of justice . . . ."

*Dennis M. O'Malley* (*Gerald J. Burzillo* with him) for Kathleen S. Wimberly & another.
*Philip T. Jones* (*Patrick J. Fitzgerald* with him) for the proponent.