EDWARD O'ROURKE, JR. *vs.* MAUREEN HUNTER.

Worcester. February 6, 2006. - May 31, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Probate Court,* Appeal, Affidavit. *Will,* Testamentary capacity, Undue influence.

This court concluded that a Probate and Family Court judge appropriately considered a will proponent's motion for summary judgment, even though the proponent had not previously moved to strike the affidavits of objections of two will contestants, because nothing in the language of Rules 16 and 27B of the Rules of the Probate Court required that the proponent move to strike the affidavits before moving for summary judgment; moreover, the judge appropriately struck, sua sponte, the affidavits. [816-821]

A Probate and Family court judge properly granted summary judgment in favor of a will proponent, where two will contestants did not present evidence sufficient to overcome the presumption that the testatrix had the requisite testamentary capacity at the time she executed her will, and where the contestants did not demonstrate that they had a reasonable expectation of prevailing on a claim of undue influence, in that there was no suggestion in the record of an unnatural disposition and no indication that the testatrix's will had been overpowered by the proponent or that she had become subservient to his wishes. [821-829]

PETITION filed in the Worcester Division of the Probate and Family Court Department on June 6, 2002.

The case was heard by *Gregory V. Roach,* J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Barry A. Bachrach* for the plaintiff.

*Michael J. Traft* for the defendant.

MARSHALL, C.J. This appeal from a will contest causes us to clarify the relationship between the provisions of Rules 16 and 27B of the Rules of the Probate Court (2006), specifically whether a will proponent must first exhaust the procedures set

forth in rule 16 before moving for summary judgment pursuant
to rule 27B, as the Appeals Court has mandated. See *Brogan* v.
*Brogan*, 59 Mass. App. Ct. 398, 404 (2003). We conclude that
no such exhaustion is required. We therefore affirm the order of
the Probate and Family Court judge in this case entering sum-
mary judgment for the proponent of the will at issue and order-
ing that the affidavits of certain objections be struck.

1. *Background.* Jennie M. O'Rourke (testatrix) died on May 7,
2002.[1] Her will, dated March 22, 2002, was presented for
probate in June, 2002, by her son, Edward W. O'Rourke, Jr.
(proponent), who was also named the executor of the estate.
Her two daughters, Gale A. Racine and Maureen Hunter
(contestants), filed objections to the probate of the will, assert-
ing that their mother lacked the requisite testamentary capacity
to execute her will, and that she was unduly influenced by the
proponent in doing so. Subsequently, the contestants filed af-
fidavits in support of their objections as required by rule 16 (a).

In December, 2002, the proponent moved for summary judg-
ment pursuant to rule 27B, and for such other relief as the judge
deemed proper. In support of his motion, the proponent submit-
ted three affidavits: his own, the affidavit of the attorney who
prepared the testatrix's will (to which was attached a rejected
draft version of the will), and the affidavit of the proponent's
counsel (to which was attached a copy of the executed will).
The proponent had not previously moved to strike the appear-
ances and the affidavits of objections of the contestants. See
rule 16 (b). The contestants opposed the motion and submitted
certain medical records of the testatrix in support of their
opposition.

Taking into consideration all of the affidavits, as well as
medical records of the testatrix, the Probate and Family Court
judge concluded that there was no evidence to overcome the
presumption that the testatrix was competent at the time the will
was executed, and that the record "unequivocally" established
the testatrix's requisite testamentary capacity to execute her
will. He also concluded that the proponent had met his burden

---

[1]The testatrix had five children: Edward W. O'Rourke, Jr.; Gale A. Racine;
Maureen Hunter; and two sons from an earlier marriage, who are not parties
to this proceeding.

of affirmatively demonstrating that there was no dispute as to any material facts concerning undue influence. The judge allowed the proponent's motion for summary judgment pursuant to rule 27B. He ordered, sua sponte, the objections of both contestants struck pursuant to rule 16 (b).

The contestants appealed.[2] The Appeals Court, in an unpublished memorandum and order pursuant to its rule 1:28, reversed the judge's order. *O'Rourke* v. *Hunter*, 64 Mass. App. Ct. 1103 (2005). Citing *Brogan* v. *Brogan*, *supra* at 404, the Appeals Court concluded that it was "essential error" for the judge to rule on the proponent's motion for summary judgment before the proponent had exhausted the procedures laid out in rule 16. We granted the proponent's application for further appellate review.

2. *Rules 16 and 27B.* We first address the appropriateness of the judge's decision to rule on the proponent's motion for summary judgment. To do so, it is helpful to understand the procedural rules governing will contests, and how those rules have changed over time. See generally Kehoe, Will Contests Under Probate Rule 16, 83 Mass. L. Rev. 6 (1998) (Kehoe). A person contesting the probate of a will must file an appearance pursuant to Rule 2 of the Rules of the Probate Court (2006).[3] Rule 16, concerning affidavits of objections and motions to strike, then provides in relevant part:

> "(a) If any person who has filed an appearance pursuant to General Probate Rule 2 on a petition for the probate of a will fails to file a written affidavit of objections to the petition, stating the specific facts and grounds upon which the objection is based, within thirty (30) days after the return day (or such other time as the court, on motion with notice to the petitioner, may allow), the court may, upon its own motion or on motion of the petitioner, the guardian ad litem (if any), or any person whose appearance is on file (with notice to any person whose appearance is on file and, if applicable, the guardian and petitioner), order the appearance struck.

---

[2]Racine withdrew her appeal prior to its entry in the Appeals Court.

[3]There is no claim in this case that either of the contestants lacked standing to contest the will, or that they failed to enter appearances as required by Rule 2 of the Rules of the Probate Court (2006).

"(b) If an affidavit of objections fails to comply with the requirements of the foregoing section (a), such affidavit of objections and the appearance of the party filing such affidavit of objections may be struck on motion with notice in the manner provided in the foregoing section (a) at any time after the filing of such affidavit of objections."

Rule 16 was adopted in the wake of St. 1986, c. 211, which abolished the practice of motions for jury issues in Massachusetts will contests. See Kehoe, *supra* at 6-7. The purpose of rule 16 (a) and (b), as revised in 1987, was "to help screen out frivolous attacks on wills." *Hobbs* v. *Carroll*, 34 Mass. App. Ct. 951, 952 (1993). Kehoe, *supra* at 7. Sections (c) and (d) of the revised rule 16, in turn,[4] provide for the expeditious resolution of nonfrivolous will contests in order "to minimize the delay and disruption in the orderly settlement of a decedent's estate which a will contest necessarily entails." *Id.*

Under section (a) of rule 16, each party contesting a will must file an affidavit of objections "stating the specific facts and grounds upon which the objection is based." Under rule 16 (b), the proponent of the will may move to strike each contestant's affidavit of objections on the ground that it does not comply with rule 16 (a), that is, that it fails to state "specific facts and grounds." If a judge agrees and strikes every affidavit of objections in its entirety, and the petition to probate is otherwise in order, the will may proceed to probate. See S.M. Dunphy, Probate Law and Practice § 23.7, at 447 (2d ed. 1997).

A motion to strike an affidavit of objections is similar in some ways to a motion to dismiss a complaint in a civil action

---

[4]Those subsections of Rule 16 of the Rules of the Probate Court, as amended in 1986, effective January 2, 1987, provide:

"(c) Upon the filing of an affidavit of objections, the court or any party may request a pretrial conference to be held within thirty (30) days. The court at such pretrial conference may consider any of the matters enumerated in [Mass. R. Civ. P. 16, 365 Mass. 762 (1974)] and may enter a pretrial order with respect to any one or more of such matters.

"(d) No postponement or continuance of the trial date set by the court at such pretrial conference shall be granted except for good cause shown upon motion with notice allowed by the court after hearing."

under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). See
*Brogan* v. *Brogan,* 59 Mass. App. Ct. 398, 399 (2003), citing
*Wimberly* v. *Jones,* 26 Mass. App. Ct. 944, 946 (1988). The
judge considers only the affidavit of objections, accepting all of
its facts as true, and may not consider any affidavits or other
evidence submitted by the proponent. See *Brogan* v. *Brogan,*
*supra* at 400-401, citing *Baxter* v. *Grasso,* 50 Mass. App. Ct.
692, 694 & n.4 (2001). See also Kehoe, *supra* at 14 ("the filing
of counteraffidavits by the proponent in support of [a motion to
strike affidavit of objections] is not appropriate"). In *Wimberly*
v. *Jones, supra* at 946, the Appeals Court, considering the
standard to be used when evaluating a rule 16 affidavit of objec-
tions, emphasized that rule 16 "requires contestants with stand-
ing to state in *verified* form the 'specific facts and ground upon
which . . . [the] objection is based,' a requirement which is no
more burdensome than court rules in other areas of the law
requiring a plaintiff to assert with specificity in his complaint
(or other pleading) allegations which, if proved, would entitle
him to prevail" (emphasis in original).[5] See *Baxter* v. *Grasso,*
*supra* at 694 (endorsing *Wimberly* standard, but noting "we
think that it is sufficient to say that the source of the specificity
required by rule 16 is the rule itself").[6]

Prior to the adoption of summary judgment procedures in the
Probate and Family Court,[7] a motion to strike was the only way
to dispose of a will contest summarily. See *Cushman* v. *Nichols,*
20 Mass. App. Ct. 980, 981 (1985). Accordingly, if the motion
to strike was unsuccessful to any extent (i.e., if any affidavit of

---

[5]These "court rules in other areas" include Mass. R. Civ. P. 9 (b), 365
Mass. 751 (1974), which states, in part, that "[i]n all averments of fraud,
mistake, duress or undue influence, the circumstances constituting fraud,
mistake, duress or undue influence shall be stated with particularity." See
*Baxter* v. *Grasso,* 50 Mass. App. Ct. 692, 694 (2001).

[6]In *Brogan* v. *Brogan,* 59 Mass. App. Ct. 398 (2003), the Appeals Court
suggested that consideration of an affidavit of objections is akin to
considerations that arise on summary judgment: "The manner of looking at a
rule 16 affidavit resembles more the manner in which a court looks at af-
fidavits in support of or against summary judgment." *Id.* at 400. Now that
motions for summary judgment are available in will contests, applying a sum-
mary judgment standard to rule 16 affidavits may cause needless confusion.
Judges ruling on rule 16 motions should ensure only that the contestants have
met the standards specified in that rule.

[7]See note 8, *infra.*

objections was not struck or struck only in part), or if the proponent did not file a motion to strike, the will contest would proceed expeditiously to a pretrial conference and then to trial. See rule 16 (c), (d); S.M. Dunphy, Probate Law and Practice § 23.7.7 (Supp. 2005).

Since January 1, 2000, however, rule 27B has provided: "Summary judgment may be granted in accordance with the provisions of [Mass. R. Civ. P. 56, 365 Mass. 824 (1974)]."[8] In addition, Rule 27A of the Rules of the Probate Court (2006) provides that "[d]epositions and discovery shall be governed by [Mass. R. Civ. P. 26-37]."[9] Nothing in the adoption of rules 27A and 27B amended rule 16. Consequently, both motions to strike and motions for summary judgment are now available in will contests.

While rule 16 (b) provides that an affidavit "may be struck on motion," it does not impose a requirement that such a motion be filed in each and every case. Further, Mass. R. Civ. P. 56, incorporated by reference in rule 27B, provides that a motion for summary judgment may be filed "at any time," without requiring any other motion as a prerequisite.[10] Nonetheless, the Appeals Court has required that the proponent of a will bring a motion to strike before moving for summary judgment. In *Brogan* v. *Brogan*, *supra* at 404, the Appeals Court, citing no authority, stated:

[8]The Supreme Judicial Court promulgated rule 27B of the Rules of the Probate Court on October 27, 1999, and the rule became effective on January 1, 2000. See S.M. Dunphy, Probate Law and Practice § 3.13.13 (Supp. 2005).

[9]Rule 27A of the Rules of the Probate Court also became effective on January 1, 2000. See S.M. Dunphy, Probate Law and Practice § 23.8, at 119 (Supp. 2005) ("Modern discovery rules are now available in all probate matters").

[10]More specifically, under Mass. R. Civ. P. 56 (a), 365 Mass. 824 (1974), "[a] party seeking to recover upon a claim, counterclaim, or cross-claim . . . may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move" for summary judgment. Under Mass. R. Civ. P. 56 (b), "[a] party against whom a claim, counterclaim, or cross-claim is asserted . . . may, at any time, move" for summary judgment. Regardless whether the proponent of a will is to be considered a "party seeking to recover" or a "party against whom a claim . . . is asserted," neither paragraph requires any preliminary step before a motion for summary judgment may be brought.

"In will contests, the procedure laid out in rule 16 *must be exhausted before there is recourse to a motion for summary judgment.* If the court allows a motion under rule 16(b) to strike the affidavit of objections . . . that is obviously the end of the matter. If the court denies the motion to strike the affidavit of objections, the proponent of the will may then, by motion for summary judgment, draw the attention of the Probate Court judge to the sort of materials that [the proponent] appended to her motion to strike" (emphasis added).[11]

In our view, there is nothing in the language of the Rules of the Probate Court to support the exhaustion requirement that the Appeals Court imposed in the *Brogan* case, nor does such a requirement effectuate the purpose of resolving will contests as speedily and inexpensively as possible. Both motions to strike and motions for summary judgment are intended to screen out will contests that do not warrant a trial. A will proponent should not be required to move to strike an affidavit of objections before moving for summary judgment any more than a defendant in a civil action is required to move to dismiss a complaint before moving for summary judgment. There may be cases where the contestant's affidavit of objections clearly sets forth sufficient facts to satisfy rule 16 (a), so that the proponent can see that a motion to strike would be futile, although discovery or the proponent's own affidavits (as in this case) may provide a basis for summary judgment. Requiring the proponent to bring a futile motion to strike in such a case would make the process of resolving will contests more expensive and less efficient. In the wake of the adoption of rule 27B, in will contests, as in other civil proceedings, a will proponent may make a tactical decision whether to proceed by motion for summary judgment or by motion to strike any affidavit of objections.[12] That decision is appropriately left to the parties.

---

[11]In *Brogan* v. *Brogan, supra,* a judge had allowed a proponent's motion to strike a contestant's affidavit of objections. See *id.* at 399. No motion for summary judgment had been filed. It was therefore unnecessary for the Appeals Court to issue any ruling concerning summary judgment procedures in will contests. The Appeals Court was commenting, in dicta, on the proponent's improper filing of affidavits in support of her motion to strike.

[12]Rule 27B additionally allows a will contestant who objects to the timing

We comment briefly on the judge's striking of the affidavits of objection, which he did on his own motion. If a judge allows a proponent's motion for summary judgment, under the present rules of the Probate and Family Court it is appropriate for the judge both to enter summary judgment against the contestant under rule 27B and to strike the contestant's affidavit of objections and appearance under rule 16 (b). Although summary judgment is now available in will contests, the judge's striking the contestants' affidavits of objections and appearance remains a procedural prerequisite for the will to proceed to probate. Cf. *Wimberly* v. *Jones,* 26 Mass. App. Ct. 944, 947 (1988); S.M. Dunphy, Probate Law and Practice § 23.7.7 (Supp. 2005).[13]

We now turn to the merits of the motion for summary judgment.

3. *The summary judgment motion.* We will uphold an order granting summary judgment if the judge ruled on undisputed material facts and his ruling was correct as a matter of law. *Anderson St. Assocs.* v. *Boston,* 442 Mass. 812, 816 (2004). While we examine the record in its light most favorable to the nonmoving party, *Foster* v. *Group Health Inc.,* 444 Mass. 668, 672 (2005), "[c]onclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment" (citations omitted). *Cullen Enters., Inc.* v. *Massachusetts Prop. Ins. Underwriting Ass'n,* 399 Mass. 886, 890 (1987). "If the opposing party fails properly to present specific facts establishing a genuine, triable issue,

of a motion for summary judgment to make the tactical decision whether to seek a continuance "to permit affidavits to be obtained or depositions to be taken or discovery to be had." Mass. R. Civ. P. 56 (f). See *Tetrault* v. *Mahoney, Hawkes, & Goldings,* 425 Mass. 456, 458 (1997). In this case, although Hunter claimed on appeal that she was denied the opportunity for "appropriate discovery," she conceded that she did not seek a continuance in the Probate and Family Court.

[13]In light of the availability of summary judgment in probate proceedings such as will contests, one commentator notes that the "Bench/Bar Rules Committee of the Probate and Family Court will consider modifying Probate Court Rule 16." S.M. Dunphy, Probate Law and Practice § 23.7.7 (Supp. 2005). We assume that any modified rule 16 will address the issue whether it remains necessary to strike affidavits of objections and an appearance once the proponent has prevailed in all respects on summary judgment.

summary judgment should be granted." *Id.* We summarize first the facts available to the judge.[14]

The contestants' opposition to the probate of their mother's will stemmed from their perceived unequal treatment under the terms of the will: it provided for specific bequests of $10,000 to each of the contestants, while the remainder of the real and personal property, including the most valuable asset, the house, went solely to the proponent or his issue.[15] In opposing the proponent's motion for summary judgment, the contestants apparently relied on their affidavits of opposition and a portion of their mother's medical records, which they had obtained from the Providence Extended Care Center (nursing home), contending that these raised a material issue of fact of the testatrix's competency and whether she was under the undue influence of their brother.[16]

We turn first to the record evidence concerning the testatrix's testamentary capacity, focusing, as the judge correctly did, on her capacity at the time the will was executed. See *Santry* v. *France*, 327 Mass. 174, 176 (1951); *Daly* v. *Hussey*, 275 Mass. 28, 29 (1931). We have carefully reviewed the medical records of the testatrix, which begin with the admission of the testatrix to the nursing home on January 28, 2002. The admission summary states that the testatrix was admitted for a hip fracture from an accidental fall,[17] and that her symptoms included depression.[18] From that date until February 25, 2002, the physi-

[14]As noted, Racine has withdrawn her appeal. We nevertheless summarize her affidavit, as well as the medical records of the testatrix, as these were part of the record before the judge at the time of his summary judgment ruling. See *Cullen Enters., Inc.* v. *Massachusetts Prop. Ins. Underwriting Ass'n*, 399 Mass. 886, 889 n.9 (1987).

[15]The record contains no statement as to the value of the house. At the time he sought to probate the will, the proponent estimated the value of the testatrix's real estate at $125,700 and her personal estate at $32,700.

[16]The docket does not reflect any opposition to the proponent's motion for summary judgment, but the judge's memorandum and decision on the motion makes reference to a memorandum of the contestants in opposition to the motion and their supporting material.

[17]The admission summary reveals that the testatrix was transferred from another facility, where she had been a patient from January 23 to January 28, 2002.

[18]The record reflects that the testatrix had been widowed earlier that same month.

cian progress notes are detailed, describing a frail, eighty year old woman, recovering from a hip fracture, unable to walk, with little or no appetite, being treated for depression. By February 7, 2002, ten days after her admission, the testatrix had contracted influenza, and on February 13, while still suffering from influenza symptoms, she was placed on a different antidepressant medication. The notes from February 20 to February 25, 2002, reflect that the testatrix suffered from a period of "flu delirium," including hallucinations, confusion, and the inability to follow commands. However, on February 25, several days after that antidepressant medication was discontinued, the progress notes reflect "flu delirium — resolved, [patient] at baseline," although the testatrix continued to experience depression.

The next entry, dated March 12, 2002, some two weeks later, describes the testatrix as "bright, alert & conversive" with an improved appetite and "stable" mood. There is no further entry until April 15, 2002, several weeks after the will was executed, where the entry is to the effect that the patient has "no complaints," and "says that she is eating well."

While the medical records reflect that the testatrix had a period of confusion and delirium in February, 2002, coinciding with influenza and a change in medication, they also reflect a resolution of this condition on February 25, 2002, more than three weeks before the testatrix executed her will. There is, in short, nothing in the medical records to suggest that on March 22, 2002, the testatrix was experiencing any confusion, let alone delusions.

We turn next to the affidavits of the contestants to determine what light they shed on their allegations of incompetency or undue influence. Hunter lived in Pennsylvania, and was unable to communicate easily with her mother by telephone because her mother had hearing difficulties. Her affidavit is therefore largely unhelpful. She stated that in March, 2000, her mother had a "near death experience," which affected her emotionally, and that during the summer of 2000, she exhibited signs of depression, hallucinated, and was physically unable to shop for groceries. Those observations are irrelevant to determining the capacity of the testatrix two years later.

Hunter also stated that from January to March, 2002, the testatrix was depressed and lost thirty pounds, a period that included the death of her husband, her broken hip, and her admission to the nursing home.[19] Hunter concedes that she stayed informed about her mother's condition primarily through conversations with Racine. Hunter's conclusion that, "[b]ecause of my mother's health problems, I do not believe that she was capable of indicating her wishes to a last will and testament," is conclusory and not supported by facts observed at the time the will was signed.

Racine, in turn, attested that after the testatrix was hospitalized in January, 2002, she "became very withdrawn, despite the fact that she had been on antidepressant medication for over a period of one year." Racine reported that she visited her mother almost every day and that, at times, the testatrix did not make sense: on one occasion, undated, the testatrix grabbed at something in the air and told Racine to open the gate, said she saw bugs on the wall, and thought she was in her kitchen cooking. On another occasion, also undated, Racine reported that the testatrix incorrectly thought that Hunter and her children were visiting. Racine additionally stated that she was "suspicious that my mother's will is dated March 22, 2002, which is about the time [Racine] had complained to the nurse that [she] was worried about her [mother's] mental and physical health." But for that last statement, which does not identify with any particularity the source of her "worry," Racine's affidavit sheds no light on the critical period when the testatrix met with her attorney, before finally executing her will on March 22, 2002.

We turn now to the affidavit of the testatrix's attorney, which provides detailed observations of the testatrix's decision-making process in the weeks before and on the day of execution. What emerges from these observations is that the testatrix was alert, communicative, and had no difficulty stating her views to her attorney. These included two primary goals, which she communicated in unequivocal terms: to will her house to the proponent and, despite limited cash assets, to provide a specific bequest to each of the contestants.

---

[19] According to Hunter's affidavit, doctors had also found an abdominal mass that may have indicated colon cancer.

The attorney, retained by the testatrix solely for purposes of estate planning and Medicare and Medicaid issues,[20] describes in detail four meetings she had alone with the testatrix at the nursing home between March 1, 2002, and March 22, 2002, when the testatrix signed her will, durable power of attorney, and health care proxy. At the initial meeting on March 1, 2002,[21] the attorney advised the proponent, who was present, and the testatrix that she represented only the testatrix, and not the proponent or any of his siblings. The proponent then left the room. At every subsequent meeting, the attorney met with the testatrix alone, and on each occasion found her to be "alert, of sound mind and communicative."

According to an estate planning instruction sheet, which the attorney completed during their initial meeting, the testatrix advised that she wished to leave her house to the proponent and the residue of her estate equally to her children. The testatrix also asked the attorney to prepare a health care proxy and durable power of attorney naming the proponent as her health care agent and attorney in fact, and Racine as successor on both.

On March 7, 2002, the attorney, who brought with her a letter to the testatrix and a draft will, again met alone with the testatrix at the nursing home. The attorney noted that the house was the testatrix's primary asset, her cash assets were only $33,950, and there were outstanding debts to be paid because of the testatrix's nursing home stay and her husband's funeral expenses.[22] At this meeting, the testatrix advised the attorney that she did not want her two sons from a prior marriage to

---

[20]The testatrix had been anxious to obtain legal counsel because she had become deeply concerned about the debts that had mounted in connection with her late husband's death. After his mother's repeated requests that he do so, the proponent first asked an attorney with close ties to the family to advise the testatrix. The family attorney declined, but offered to identify an attorney who specialized in elder law. He did so, and the proponent contacted the elder law specialist and requested that she meet with the testatrix. Thereafter the elder law specialist met alone with the testatrix.

[21]The medical records of the testatrix indicate that her confusion had by then abated.

[22]The attorney's letter to the testatrix noted, in bold type, "[B]ecause you have very few assets other than your home, and the expenses of your estate will be taken from those assets[, the proponent] is virtually the only beneficiary of your estate."

inherit anything. The testatrix and her attorney then conferred regarding various options to distribute her assets among the proponent and the contestants. The testatrix asked the attorney to revise the documents to reflect their discussions.

The third meeting took place on March 18, 2002, during which the attorney presented the testatrix with another draft will, reflecting the prior discussions with the testatrix. When the testatrix, cognizant of her limited cash assets, expressed concern that the contestants would receive little or nothing under the will as drafted, the attorney reviewed with the testatrix various options available to her to address the situation.[23] The testatrix clearly instructed that she wanted the house to go to the proponent, and emphasized that she and her late husband had agreed to that disposition. Following further discussion, the testatrix requested that the proponent join the discussion, whereupon she told her attorney in the presence of the proponent that she wanted $10,000 to go to each of the contestants. The testatrix asked that the will be redrafted to provide for these specific bequests to the contestants.

At their fourth and final meeting on March 22, the attorney brought the testatrix another redrafted will. The attorney and the testatrix reviewed the documents together, alone. The testatrix then signed the will, durable power of attorney, and health care proxy. Two staff members, one of whom was a nurse practitioner, witnessed the testatrix sign the will, and attested that, to the best of their knowledge, the testatrix was "of sound mind, and under no constraint or undue influence." The proponent was not present when his mother signed the documents.

We now review the order of the judge as he applied the facts contained in the summary judgment record to the applicable law.

a. *Testamentary capacity.* The legal standards that determine testamentary capacity are well established. At the time of executing a will, the testatrix must be free from delusion and understand the purpose of the will, the nature of her property,

---

[23]The attorney advised that the testatrix had the option of leaving her estate to the proponent and the contestants equally, in which event the house would be sold, and they would share in the proceeds. As an alternative, the attorney suggested leaving some set amounts or percentages to the contestants.

and the persons who could claim it. See *Santry* v. *France*, 327 Mass. 174, 175-176 (1951). "The critical question is whether the testator was of sound mind at the time the will was executed. It has been held that, 'a person [ . . . ] may possess testamentary capacity at any given time and lack it at all other times.' " S.M. Dunphy, Probate Law and Practice § 23.4, at 437 (2d ed. 1997), quoting *Daly* v. *Hussey*, 275 Mass. 28, 29 (1931). See *Santry* v. *France*, *supra*. The proponent has the burden of proof on the issue of testamentary capacity. *Duchesneau* v. *Jaskoviak*, 360 Mass. 730, 732 (1972). "In sustaining that burden, he is aided by a presumption that the testator had the requisite testamentary capacity. However, the presumption has effect only until evidence of want of capacity appears." (Citations omitted.) *Id.*

Here, the contestants in their affidavits make various general statements about the testatrix's health, including her mental health. But the contestants offer no evidence that she lacked testamentary capacity during the March, 2002, discussions with her attorney or on March 22, when she executed her will. In sharp contrast, the undisputed evidence is that the attorney of the testatrix observed her client to possess testamentary capacity not only on March 22, the legally critical date, but also during each of several detailed conversations that preceded the execution of the will. The testatrix reviewed, commented on, and rejected two versions of a draft will before executing a third version. She instructed her attorney how to modify each draft in accordance with her own specific wishes, including her decision to disinherit her two sons from an earlier marriage, to provide a sum certain for the contestants, and to leave her house to the proponent. The medical records and the attorney's affidavit, including statements concerning the two witnesses to the will, establish that the testatrix was of sound mind on March 22, 2002, when she executed her will. The judge correctly ruled that the contestants did not present evidence sufficient to overcome the presumption that the testatrix had the requisite testamentary capacity at the time she executed her will.

b. *Undue influence.* Under settled law, the contestants had the burden of proving undue influence. *Tetrault* v. *Mahoney, Hawkes,*

& *Goldings*, 425 Mass. 456, 464-465 (1997).[24] A proponent will prevail on a motion for summary judgment if he affirmatively demonstrates that the contestants had "no reasonable expectation of proving an essential element of [their] case." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). Four considerations are usually present in a case of undue influence: "that an (1) unnatural disposition has been made (2) by a person susceptible to undue influence to the advantage of someone (3) with an opportunity to exercise undue influence and (4) who in fact has used that opportunity to procure the contested disposition through improper means" (citations omitted). *Tetrault* v. *Mahoney, Hawkes & Goldings, supra* at 464.

We agree with the judge that there is no suggestion in the record of an unnatural disposition. The testatrix bequeathed $10,000 to each of her two daughters, and her house to one of her sons. She informed her attorney that she and her late husband had determined that their son should inherit their house. The testatrix also specifically determined not to provide for two other children of a previous marriage. There is nothing inherently unnatural about this disposition. See, e.g., *id.* at 465 n.11.

Although the judge's conclusion of no unnatural disposition disposes of the claim of undue influence, we note the absence of any facts that the testatrix's will was overpowered by the proponent or that she became subservient to his wishes. *Id.* at 464. See *Neill* v. *Brackett*, 234 Mass. 367, 370 (1920) ("Mere suspicion, surmise, or conjecture are not enough to warrant a finding of undue influence. There must be a solid foundation of established facts upon which to rest an inference of its existence"). The evidence establishes that the testatrix's will was drafted by an attorney not previously known to the proponent.[25] The attorney met with the testatrix alone on several occasions to discuss her wishes; the proponent was not present

---

[24]See *Cleary* v. *Cleary*, 427 Mass. 286, 294-295 (1998), for a discussion of the burden of proof when the proponent is in a fiduciary relationship with the decedent.

[25]Hunter makes a cursory allegation in her affidavit that the elder law attorney is a friend of the proponent's wife, but does not state any facts suggesting a preexisting relationship between the proponent and the attorney. Even if true, Hunter's statement does not establish that there was any undue influence by the attorney or the proponent on the testatrix.

when the testatrix signed her will. Racine had as much access to her mother as did the proponent, visiting her mother in the nursing home almost every day. The detailed (and unchallenged) chronology provided by the testatrix's attorney of her meetings and communications with her client confirm the correctness of the judge's conclusion that there is no dispute as to any material fact on the undue influence claim.

4. *Conclusion.* We affirm the entry of summary judgment in favor of the proponent and the judge's order striking the affidavits of objections. We remand the case to the Probate and Family Court so that the will may proceed to probate.

*So ordered.*