NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1393

CARMELA CURLEY & another[1]

vs.

FABIANA TERNULLO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Carmela Curley and John Ternullo appeal from a decree and order of the Probate and Family Court on the petition of Fabiana Ternullo admitting the will of Domenico Ternullo (decedent) to formal probate, as well as a judgment denying Carmela and John's equity complaint against Fabiana.[2]  Carmela and John argue that the judge erred in denying their motion for recusal and in allowing summary judgment in favor of Fabiana on the issue of the decedent's testamentary capacity.  They also argue that the judge's finding that the deed, will, and powers of attorney were

_____

[1] John Ternullo.

[2] Because two of the parties share a last name, we refer to all parties by their first names to avoid confusion.

not the product of undue influence was clearly erroneous.  We affirm.

Background.  The decedent died on August 30, 2019, at age sixty-seven.  He was survived by his wife, Fabiana; their minor son, Domenico Ternullo, Jr. ("Mimmo"); and his two children from a prior marriage, Carmela and John.  Before marrying in 2006, the decedent and Fabiana executed a prenuptial agreement, under which Fabiana disclaimed any intestate share of the decedent's estate.  However, the prenuptial agreement allowed the decedent to provide for Fabiana by a will.  After he and Fabiana married, the decedent purchased a home and took title in his name alone.[3] The couple lived there with their son Mimmo, who was born in 2007, until the decedent's death.

In January 2019, the decedent was diagnosed with mesothelioma.  In April 2019, Fabiana had dinner with Attorney Myra Lyons, who had represented the decedent in the preparation of the couple's prenuptial agreement and assisted him with various legal matters.  At that dinner, Attorney Lyons asked Fabiana if the decedent had an estate plan, and Fabiana told her that he did not.  Attorney Lyons later helped the decedent with some legal matters in July and August of 2019.  On August 27,

---

[3] In 2013, the decedent reconveyed the property to himself, and again took title solely in his name.

2

2019, the decedent was hospitalized for the final time. After Attorney Lyons learned of the decedent's hospitalization, she prepared a deed conveying title to the couple's residence to Fabiana. "Neither Fabiana nor the [d]ecedent asked her to prepare a deed." However, Attorney Lyons believed that the decedent did not have an estate plan and thought he might "want to take care of [it]."

On August 28, 2019, Attorney Lyons and her husband visited the decedent in the hospital. After asking Fabiana to leave the room, Attorney Lyons told the decedent that "she had prepared a deed and asked what he wanted to do." The decedent told her that he wanted to "take care of Fabiana and Mimmo," and leave everything to them. He confirmed that he understood what he was signing and that no one had told him what to do, and he signed the deed with Attorney Lyons, her husband, and Mimmo in the room. Attorney Lyons also asked the decedent about a trust that he had previously established, and he told her to "leave it alone."[4] Attorney Lyons left the hospital and prepared a will and two copies of a power of attorney.

On August 29, 2019, Attorney Lyons returned to the hospital with the prepared will and powers of attorney. Michael Lyle and

---

[4] The decedent created the trust in 1999. Carmela and John each hold a beneficial interest in the trust.

3

William Vinci, longtime friends of the decedent, were present to witness the execution of the documents. During the visit, which lasted approximately an hour, the decedent answered questions, appeared alert, and remembered having signed the deed the day before. Attorney Lyons explained that the will "left everything to Fabiana other than the [t]rust, and the [d]ecedent said that was what he wanted." Attorney Lyons also explained the powers of attorney. The decedent stated that he understood, and he "repeated several times" that he wanted to take care of Fabiana and Mimmo. The decedent signed the will and the two copies of the power of attorney.[5]

Following the decedent's death, on October 16, 2019, Carmela and John filed an equity complaint in the Probate and Family Court seeking recission of the deed conveying the residence to Fabiana based on lack of capacity and undue influence.[6] On March 6, 2020, Fabiana filed a petition for formal probate of the decedent's will and requested to be appointed as the personal representative.[7] On July 9, 2020,

---

[5] On August 29, 2019, using a power of attorney that the decedent signed that day, Fabiana withdrew money from the decedent's bank accounts and transferred it to her own account.

[6] The complaint also alleged interference with expectancy and unjust enrichment.

[7] On June 2, 2020, a Probate and Family Court judge entered a decree and order admitting the decedent's will to formal probate and appointing Fabiana as the personal representative.

4

Carmela and John filed affidavits of objection on grounds that the decedent lacked testamentary capacity to execute the will and that the will was the product of undue influence. The equity complaint and the petition for probate were then consolidated. On February 10, 2021, Carmela and John amended their equity complaint to add counts seeking recission of the power of attorney instrument and recission of actions taken under that instrument by Fabiana.

On August 10, 2021, Fabiana filed motions for summary judgment, seeking to have Carmela and John's equity complaint dismissed and to admit the will to probate. On November 12, 2021, Carmela and John moved to recuse the judge. After a hearing, the Probate and Family Court judge denied the motion for recusal and granted partial summary judgment in favor of Fabiana on the issue of the decedent's testamentary capacity to execute the deed, will, and powers of attorney. The judge denied summary judgment on the issues of undue influence and unjust enrichment, and dismissed the claim of interference with expectancy. After a four-day trial, the judge concluded that the deed, will, and powers of attorney were not procured through

On June 18, 2020, Carmela and John filed a motion seeking an extension of time to file their objections to the petition and asked the court to vacate the decree. The judge allowed their motion and vacated the decree.

5

undue influence by Fabiana.[8]  The judge further denied Carmela and John's request to rescind the actions taken under the powers of attorney, struck their objections to the will, and admitted the will to formal probate.  This appeal followed.

Discussion.  1.  Motion for recusal.  Carmela and John argue that the denial of their motion for recusal constituted an abuse of discretion because the judge's "decisions and remarks" revealed a "bias" against them and his impartiality might reasonably be questioned due to his familiarity with Attorney Lyons.[9]  This claim is unavailing.

In deciding a motion for recusal, a judge must "consult first [his] own emotions and conscience" to ascertain whether he is subjectively free from bias.  Commonwealth v. Morgan RV Resorts, LLC, 84 Mass. App. Ct. 1, 9 (2013), quoting Lena v. Commonwealth, 369 Mass. 571, 575 (1976).  If the judge "subjectively believes [he] can rule impartially," he "must next

---

[8] The judge found that the elements of unjust enrichment were not present.

[9] Carmela and John argued in their motion for recusal that the case was "inappropriately pre-judged" based on the judge's "rulings and commentary" in the present action and in a related breach of fiduciary duty litigation.  They pointed to, inter alia, the judge scheduling the case for trial while there were motions pending, the judge dismissing their complaint for breach of fiduciary duty on "flawed procedural grounds," and the judge's observations that they seemed to be "seeking a larger share of their late father's assets than what would be left for their minor half-brother."

attempt an objective appraisal of whether . . . [his] impartiality might reasonably be questioned" (citation omitted). Morgan RV Resorts, LLC, supra. We review a judge's decision on a recusal motion for abuse of discretion. See Haddad v. Gonzalez, 410 Mass. 855, 862 (1991).

Here, Carmela and John have failed to show that any alleged bias of the judge stemmed from an extrajudicial source. See Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 524-525 (1997). The mere fact that they "suffer[ed] adverse rulings during litigation does not establish lack of judicial impartiality." Clark v. Clark, 47 Mass. App. Ct. 737, 739 (1999). Moreover, the judge's "familiarity" with Attorney Lyons arose from his judicial role, which is a factor that "weighs heavily in favor of the judge's decision not to disqualify himself" (citation omitted). Haddad, 410 Mass. at 862. While Attorney Lyons was a witness in the case, Carmela and John offered no evidence, and made no proffer to suggest, that the judge had any relationship with her beyond her appearing before him in other proceedings. On the record before us, we cannot say that the judge made "a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

7

2.  Testamentary capacity.  Carmela and John contend that the judge improperly entered summary judgment in favor of Fabiana on the issue of the decedent's testamentary capacity to execute the deed, will, and powers of attorney because there were material facts in dispute.  We disagree.

We review a grant of summary judgment de novo to determine whether, "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law" (citation omitted).  Casseus v. Eastern Bus Co., 478 Mass. 786, 792 (2018).  "While we examine the record in its light most favorable to the nonmoving party . . . '[c]onclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment.'"  O'Rourke v. Hunter, 446 Mass. 814, 821 (2006), quoting Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass'n, 399 Mass. 886, 890 (1987).

"At the time of executing a will, the [testator] must be free from delusion and understand the purpose of the will, the nature of [his] property, and the persons who could claim it."  O'Rourke, 446 Mass. at 826-827.  "[A] person [. . .] may possess testamentary capacity at any given time and lack it at all other times."  Matter of the Estate of Rosen, 86 Mass. App. Ct. 793, 798 (2014), quoting O'Rourke, supra at 827.  "The proponent has

the burden of proof on the issue of testamentary capacity" (citation omitted). Id. "A presumption that the testator had the requisite testamentary capacity aids the proponent, but it disappears if the opponent presents evidence of lack of capacity." Maimonides Sch. v. Coles, 71 Mass. App. Ct. 240, 252 (2008).[10]

Here, Carmela and John did not present any direct evidence to rebut the presumption of testamentary capacity. See Haddad v. Haddad, 99 Mass. App. Ct. 59, 69 (2021). While they claimed that the decedent's "mental and physical condition had worsened" by the time he was hospitalized, they offered no evidence that he lacked testamentary capacity during the August 28, 2019 execution of the deed or the execution of the will and powers of attorney the next day.[11] Carmela and John presented evidence that the decedent was physically dependent on others, was receiving morphine, and had difficulty speaking due to shortness

---

[10] Carmela and John argue that the judge "improperly reversed the burden at the summary judgment stage." As discussed infra, Fabiana's submissions bolstered the presumption of testamentary capacity and "discharged [her burden as the movant] by showing that there is an absence of evidence to support the non-moving party's case." Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). Thus, we discern no error in the judge's allocation of the burden of proof.

[11] Indeed, the affidavit that Carmela and John cited to support their claim that the decedent's "mental and physical condition had worsened" contained no evidence of his mental or cognitive condition.

9

of breath, but they failed to present evidence or facts connecting his physical decline to a lack of testamentary capacity. Aside from conclusory statements about the decedent's capacity, neither Carmela nor John attested to first-hand observations of the decedent's mental state.

In contrast, both Attorney Lyons and the witnesses to the execution of the will and powers of attorney perceived the decedent to possess testamentary capacity. They attested that the decedent was of sound mind during the execution and described him as "lucid, alert, and awake" during their visit. The decedent expressed his desire to take care of Fabiana and Mimmo, answered questions, indicated that he understood what he was signing, and instructed Attorney Lyons to leave the trust alone. In addition to the medical records and affidavits of the witnesses, Fabiana presented an affidavit from a medical expert who opined that the low dose of morphine the decedent received was "insufficient" to impact his judgment. Carmela and John's references to areas of the medical records where the decedent received morphine, he was fatigued, or an instance where he experienced "confusion" do not contradict the specific and detailed observations made by Attorney Lyons and the two witnesses. Thus, the entry of summary judgment in favor of Fabiana on the issue of testamentary capacity was proper.

10

3.  Undue influence.  Carmela and John challenge the judge's allocation of the burden of proof on the issue of undue influence as well as the judge's factual findings.  We discuss each in turn.

a.  Burden of proof.  "To prove undue influence, a contestant must show 'that an (1) unnatural disposition has been made (2) by a person susceptible to undue influence to the advantage of someone (3) with an opportunity to exercise undue influence and (4) who in fact has used that opportunity to procure the contested disposition through improper means.'" Maimonides Sch., 71 Mass. App. Ct. at 255-256, quoting O'Rourke, 446 Mass. at 828.  "In a will contest involving allegations of undue influence, the burden of proof ordinarily rests with the party contesting the will."  Matter of the Estate of Moretti, 69 Mass. App. Ct. 642, 651 (2007).  As Carmela and John point out, "in cases involving a fiduciary, the fiduciary who benefits in a transaction with the person for whom [she] is a fiduciary bears the burden of establishing that the transaction did not violate [her] obligations" (quotation and citation omitted).  Matter of the Estate of Urban, 102 Mass. App. Ct. 284, 290 (2023).  However, "[t]he burden of proving the absence of undue influence shifts to the fiduciary only where [she] has actually taken part in the questioned transaction" (quotation and citation omitted).  Id.

11

Carmela and John argue that the judge erred in allocating the burden of proving undue influence to them because Fabiana was a fiduciary under the power of attorney and an "interloper" in the decedent's attorney-client relationship with Attorney Lyons. We disagree. There is no evidence that Fabiana "ha[d] actually taken part in the questioned transaction" (citation omitted). Matter of the Estate of Urban, 102 Mass. App. Ct. at 290. Fabiana was not present during the execution of the deed, will, or powers of attorney, and there is no evidence that she asked Attorney Lyons to prepare the documents or directed the provisions of the will. Moreover, as further discussed below, the record supports the judge's findings that Attorney Lyons provided independent counsel to the decedent, and that Fabiana neither asked Attorney Lyons to have the will or deed executed nor directed her regarding the provisions of the will.

b. Factual findings. Carmela and John challenge the judge's findings of fact underlying his conclusion that the decedent was not subject to undue influence by Fabiana. We review the judge's findings of fact for clear error. See Demoulas, 424 Mass. at 509. "A finding is clearly erroneous only when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (quotations and citation omitted). Id.

12

First, we discern no clear error in the judge's finding that the disposition was not unnatural. "A testamentary disposition is not 'unnatural' simply because it favors certain members of the testator's immediate family over others." Rostanzo v. Rostanzo, 73 Mass. App. Ct. 588, 605 (2009). Given that the decedent and Fabiana were married for thirteen years and had a minor child, it was not unnatural for the decedent to leave his assets to Fabiana to provide for them both. See O'Rourke, 446 Mass. at 828 (nothing "inherently unnatural" about disposition benefitting some children and not others). Nor does the fact that the decedent kept his finances separate make the disposition unnatural. See Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 465 n.11 (1997) (disposition "is not made unnatural merely by showing that the wife and the testator kept separate finances"). In addition, the decedent still provided for Carmela and John through the trust, which remained unchanged. Based on these circumstances, the judge properly concluded that the disposition of assets to Fabiana was not unnatural.

Second, the record supports the findings that the decedent was not susceptible to undue influence and that Fabiana did not have an opportunity to exercise undue influence. The decedent was not isolated during his final hospitalization and had

13

numerous visitors, including Carmela and John.[12]  Compare Matter of the Estate of Moretti, 69 Mass. App. Ct. at 655 (overwhelming evidence of undue influence, including that decedent was isolated from his "long-time friends and advisers").  Further, although the decedent was dependent on others and asked Fabiana to speak on his behalf during his final hospital stay, she was not present during the execution of the deed, will, or powers of attorney, and did not discuss estate planning with the decedent before or during his hospitalization.

Finally, Carmela and John argue that the judge erred in finding that there was no evidence that Fabiana had procured the deed, will, or powers of attorney.  This is so, they contend, because "it is clear from the record that Attorney Lyons acted based on representations from Fabiana."  Contrary to this argument, the record supports the judge's finding.  The judge credited Attorney Lyons's testimony that she prepared the deed, will, and powers of attorney without any involvement from Fabiana and that she prepared the will and powers of attorney after speaking with the decedent.  The judge also did not err in finding that Attorney Lyons provided independent counsel to the decedent and did not have a relationship with Fabiana other than

---

[12] John described the hospital as a "circus" when he arrived there on August 29, 2019, due to the amount of people there to visit the decedent.

knowing her as the decedent's wife.  Furthermore, the judge found that Fabiana testified credibly that she did not procure the deed, will, or powers of attorney, and although Fabiana acknowledged concern about the absence of a will, "she did not discuss this with the [d]ecedent."  The trial evidence supports the judge's findings and thus, we discern no error.[13]

Conclusion.  For the foregoing reasons, we affirm the decree admitting the decedent's will to formal probate and the judgment on Carmela and John's equity complaint.[14]

Judgment affirmed.

Decree and order on petition
  for formal adjudication
  affirmed.

By the Court (Neyman, Singh &
  Toone, JJ.[15]),

Clerk

Entered:  January 17, 2025.

---

[13] We recognize that the parties presented competing testimony and evidence at trial, and do not imply that the arguments made by Carmela and John are without a measure of persuasiveness.  We hold only that the judge's findings of fact and conclusions of law are supported by the record.

[14] Fabiana's request for attorney's fees and costs is denied.

[15] The panelists are listed in order of seniority.