NEVERS, IN THE MATTER OF THE ESTATE OF, 100 Mass. App. Ct. 861

 
 IN THE MATTER OF THE ESTATE OF LUCY M. NEVERS.

100 Mass. App. Ct. 861
 November 17, 2021 - April 15, 2022

Court Below: Probate and Family Court, Barnstable Division
Present: Rubin, Desmond, & Shin, JJ.

 

Will, Execution, Testamentary capacity, Undue influence, Validity. Undue Influence. Probate Court, Affidavit. 

In the circumstances of a petition brought by an individual (petitioner) seeking formal probate of the testator's will (which left ninety percent of the estate to the petitioner, who was not related to the testator, for the education of the petitioner's own children, and which excluded all of the testator's relatives), a Probate and Family Court judge erred in entering an order striking the affidavits of objections filed by the testator's nieces and nephew, where the allegation of improper execution of the will was sufficient to defeat the motion to strike, in that the will was not signed by the testator herself and the attestation by the two witnesses that the "testatrix signed and executed this instrument as her last will in the presence of each of us" demonstrated that the will was not self-proving, and thus, the petitioner was not entitled to a presumption of compliance with signature and other requirements of execution. [867-872]

PETITION filed in the Barnstable Division of the Probate and Family Court Department on December 3, 2019. 

 The case was heard by Arthur C. Ryley, J.

 Sara J. Kohls for Patricia Landry & others.

 Tracey L. Taylor for Debra L. Coccoro.

 RUBIN, J. This matter involves the legitimacy of the will of Lucy M. Nevers, dated May 6, 2016. Nevers died on October 24, 2019. On December 3, 2019, petitioner Debra L. Coccoro, the proponent of the will, filed in the Probate and Family Court a petition for formal probate of the will and for appointment of a personal representative, seeking to be appointed the personal representative of Nevers's estate, a position to which she was nominated in Nevers's will. Coccoro, an elder law attorney, is the daughter of Nevers's next door neighbor. In addition to nominating Coccoro as personal representative, the will left ninety percent of Nevers's estate to Coccoro to be used for the education of Coccoro's own daughters. It left five percent each to two charities, the Massachusetts

 Page 862 

 Society for the Prevention of Cruelty to Animals and the Garden Club of Harwich.

 The will, drafted by Attorney Kelly Jason, excluded all of Nevers's relatives, including her sister who was alive at the time of the drafting and execution of the will, "for reasons best known to [her]self." The will was not signed by the testator herself. Rather, it reflected that Nevers's "signature" -- that is, her name written in cursive -- was affixed by a notary public. Nevers's failure personally to sign the will appears to have been anticipated at the time the will was finally prepared, as printed language appears on the signature page reading, "Signature affixed by notary public at her request and in the presence of the following two witnesses." Although the signature line does not specify who the notary public was that affixed Nevers's "signature," Attorney Jason was the notary public who notarized that same page of the will. The witnesses attested that "[w]e, the undersigned witnesses, each do hereby declare in the presence of the aforesaid [t]estatrix, that the [t]estatrix signed and executed this instrument as her last [w]ill in the presence of each of us, that she signed it willingly, that each of us hereby signs this [w]ill as witness in the presence of the [t]estatrix, and that to the best of our knowledge the [t]estatrix is eighteen (18) years of age or over, of sound mind, and under no constraint or undue influence."

 The court issued a citation on petition for formal adjudication, which stated a return date of January 7, 2020, and informed the recipients that in order to object to the proceedings, "you or your attorney must file a written appearance and objection at this [c]ourt." See G. L. c. 190B, § 1-401 (a) ("If notice on any matter is required by reference to this section and except for specific notice requirements as otherwise provided, the court shall fix a return date and issue a citation"); G. L. c. 190B, § 3-403 (a) ("Upon commencement of a formal testacy proceeding, notice shall be given in the manner prescribed by section 1-401 by the petitioner to the persons herein enumerated"); G. L. c. 190B, § 3-403 (b) ("Notice shall be given to . . . heirs of the decedent"). An objector is required to make an appearance in writing by 10 a.m. on the return date, see G. L. c. 190B, § 1-401 (d), and to file a written affidavit of objections within thirty days after the return date, see G. L. c. 190B, § 1-401 (e).

 By a letter dated December 26, 2019, and entered on the docket the following day, objector Patricia Landry, the daughter of Nevers's late sister, Lydia Tucker, filed a notice of appearance and 

 Page 863 

objection. Lydia Tucker's son, Earle Tucker, III, filed a similar notice of appearance and objection that was entered on the docket on January 6, 2020. Landry's counsel filed a notice of appearance that was entered on the docket on January 27, 2020, which stated that "[a] [m]otion for discovery will be filed if not agreed upon by counsel for the [e]state." Through counsel, petitioner Coccoro agreed to a fourteen-day extension to the deadline for the filing of affidavits of objections, to February 19, 2020. An assented-to motion extending the deadline for fourteen days was filed with the court.

 On February 14, 2020, Landry's counsel entered notices of appearance on behalf of Earle Tucker and Deborah Wilson, Lydia Tucker's remaining child and the third and final objector here, and on February 18, 2020, each objector entered an individual affidavit of objections pursuant to G. L. c. 190B, § 1-401 (e). Each affidavit reserved the right to supplement as additional information became available. Around the same time, it appears that the objectors also served their first request for the production of documents and things, and a first set of interrogatories, on Coccoro.

 With respect to the allegation of improper execution, Landry's affidavit stated, "My [a]unt [i.e., Nevers] did not execute the [w]ill. It was executed 'at her request' by [a] [n]otary [p]ublic, who we believe to be Attorney Kelly Jason. The [n]otary [p]ublic also notarized the [w]ill. . . . I have no way of knowing if the [w]ill was executed at my [a]unt's direction, that my [a]unt knew of the contents of the [w]ill, and that the [n]otary executed my [a]unt's [w]ill in her conscious presence." The affidavit also included allegations with respect to undue influence and lack of testamentary capacity, including that Nevers and her sister spoke frequently during the period when the will was executed, that there was no animosity between them, and that Nevers had never mentioned Coccoro to Landry or to her mother. Landry also wrote, "My [a]unt's primary cause of death was listed as 'failure to thrive' and 'protein malnutrition[,'] and secondary causes of death were listed as 'hypertensive cardiovascular heart failure and chronic kidney disease[.'] Hypertension causes insidious dysfunction to the blood vessels supplying the brain, causing impaired blood flo[w] associated with vascular cognitive impairment and diminishing brain function. This leads to mental decline and dementia. I know this based on my training and experience as a physician." Landry expressed concern about testamentary capacity,

 Page 864 

 and about whether Coccoro had unduly influenced Nevers, drawing an inference from the fact that the bequest to Coccoro purported to be for the education of her children that Coccoro might have played on the fact that Nevers "was a school teacher and cared deeply about education." Landry swore in her affidavit that her mother told her brother Earle Tucker, also an objector, that he was a beneficiary of Nevers's will. Landry stated, "I reserve the right to supplement this [a]ffidavit of [o]bjections as more facts relevant to this matter are discovered. It is my understanding that my attorneys have requested additional time to conduct discovery prior to submitting this [a]ffidavit, but their reasonable request was denied by Attorney Coccoro's counsel."

 Objector Earle Tucker filed an affidavit of objections that included a statement that "[m]y [m]other informed me that I was named as beneficiary in my [a]unt's [w]ill." His affidavit and one filed by objector Wilson both said, "I agree with the statements contained in the [a]ffidavit of [o]bjections filed by my sister, Patricia Landry, MD, and incorporate those statements herein by reference."

 On or around February 27, 2020, the objectors served deposition subpoenas on Coccoro and Attorney Jason.

 On March 12, 2020, Coccoro responded to the interrogatories. [Note 1] Her answers to the interrogatories purported to describe how the decedent came to leave ninety percent of her estate to Coccoro. They stated that Coccoro had known Nevers for decades as a next door neighbor and became close to her around 2004 or 2005 when Coccoro visited with Nevers for one to two hours every other week, when Coccoro went to collect the mail that Nevers picked up for Coccoro's parents who wintered in Florida. In 2012, Coccoro asked Nevers to be one of her recommenders for the Florida bar. At some point, Nevers lost her driver's license; Coccoro then "took her shopping a few times and brought her to all of her appointments" with one of her doctors, although Coccoro's mother took Nevers to all her appointments with another of her doctors. In early 2016, Nevers was hospitalized following a fall, and she requested that hospital staff contact Coccoro. Coccoro visited her and inquired if she had a power of attorney and health care proxy, to which Nevers responded that she wanted to appoint Coccoro to those roles. Nevers also stated that she wanted to

 Page 865 

 update her will. Coccoro asked if she wanted to leave her assets to her sister, Lydia Tucker, and Nevers "said no because her sister had dementia and was in a nursing home." Nevers also stated that she did not want to leave her assets to charity, because she had given enough to charity. Coccoro asked how she wanted her assets distributed and Nevers replied, "[Y]ou decide." When Coccoro requested further guidance as to how to distribute the assets, Nevers repeated that Coccoro could decide.

 At this point, according to her interrogatory answers, Coccoro decided that an independent attorney should step in to discuss Nevers's desire to change her will and to notarize documents, so she contacted Attorney Jason, with whom Coccoro had a business relationship. The healthcare proxy and power of attorney documents were signed at the hospital in the presence of Nevers, Attorney Jason, Coccoro, and two witnesses from Coccoro's office. Afterwards, Attorney Jason met with Nevers privately in the hospital room to discuss the will. Coccoro had no further communications with either Nevers or Attorney Jason regarding the will, except when Attorney Jason contacted Coccoro asking for her personal information because Nevers named her in the will. Attorney Jason also e-mailed Coccoro a copy of the will, which she had not requested. Coccoro stated that although she was not present when Nevers executed her will, her understanding was that it was executed by a notary public because Nevers had dislocated her right shoulder and could not hold a pen or move her arm.

 By a motion dated March 16, 2020, and entered on the docket three days later, Attorney Jason sought a protective order regarding her deposition, citing attorney-client privilege. Shortly thereafter, the objectors filed (1) an opposition to the motion for a protective order and (2) a motion seeking a court order regarding waiver of the attorney-client privilege, which requested that Coccoro be required to execute HIPAA waivers, so the objectors could obtain Nevers's medical records, and to execute a waiver of attorney-client privilege, so, despite Attorney Jason's objection, the objectors could proceed with her deposition.

 A pretrial conference, during which arguments regarding the filings were made, was held on or around June 3, 2020. Counsel for Coccoro indicated at that time that she intended to file a motion to strike the affidavits of objections, and on that same date a judge of the Probate and Family Court (motion judge) "decline[d] to rule on the [o]bjector's [m]otion to [w]aive [a]ttorney-

 Page 866 

[c]lient [p]rivilege at this time as the [p]etitioner has indicated she will be filing a [m]otion to [s]trike [o]bjections."

 By a motion dated July 1, 2020, and entered on the docket two days later, Coccoro sought to strike the affidavits of objections. [Note 2] The objectors filed an opposition, which included detailed updated information that they obtained during discovery, and they stated that discovery was not yet complete. They argued that the will was not properly executed, asserting that "the May 6, 2016 [w]ill was not executed by Lucy [Nevers]. . . . Furthermore, there is no evidence that Lucy knew of the contents of the instrument, intended for it to be her last will and testament, and that the formalities of G. L. c. 190B, [§ 2-502 (a) (2)] [which explains how a will can validly be signed] were complied with." They also asserted their belief that Nevers lacked the capacity to execute the will and that the will was the product of undue influence. An affidavit of Landry, who is a medical doctor, was also attached to the opposition. In it she stated that based on a discharge summary from Cape Cod Hospital dated April 14, 2016, which had been turned over during discovery, Nevers at that time was suffering from encephalopathy, a disease of the brain that causes impaired cognitive functioning and diminished mental capacity, and from failure to thrive. Landry inferred based on her training and experience that Nevers was also prescribed medication at that time for pain management, which can have a significant effect on cognitive functioning. Landry's affidavit also stated that her mother had been admitted in April, 2015, to a "skilled nursing facility because she was not able to walk. She was not admitted due to dementia. In April, 2016, my mother was alert, oriented, able to communicate, and continued to use her smart phone unassisted."

 After a hearing on August 4, 2020, the motion judge entered an order striking the affidavits of objections on September 8, 2020. The objectors filed a timely notice of appeal regarding the motion judge's September 8, 2020, order. Subsequently, the Probate and Family Court issued its decree and order of formal probate on 

 Page 867 

October 7, 2020, and the objectors filed a second notice of appeal that entered on the docket on October 20, 2020, which incorporated the previous notice of appeal from the September 8, 2020, order.

 Discussion. The procedure under G. L. c. 190B, § 1-401 (e) and (f), for contesting a will differs from that attendant on most other civil litigation. See generally O'Rourke v. Hunter, 446 Mass. 814, 816-818 (2006) (describing procedure under former Rule 16 of Rules of Probate Court [2006], provisions of which have now been codified in G. L. c. 190B, § 1-401 [e] and [f]). As relevant here, the statute provides as follows:

"(e) The objecting party shall file a written affidavit of objections to the proceeding, stating the specific facts and grounds upon which the objection is based within [thirty] days after the return date. . . .

"(f) If an affidavit of objections fails to comply with the requirements of the foregoing section (e), such affidavit of objections and the appearance of the party filing such affidavit of objections may be struck on motion after notice at any time after filing of such affidavit of objections."

G. L. c. 190B, § 1-401. [Note 3]

 "The purpose" of this statutory language, taken from the former rule 16, "was 'to help screen out frivolous attacks on wills'" (citation omitted). O'Rourke, 446 Mass. at 817. Under § 1-401 (e) and (f), objection to a will is not undertaken by filing a complaint, but by filing an affidavit of objections. The burden on the objector is somewhat higher than that required of a litigant filing a complaint, because the objector must "state in verified form the 'specific facts and ground upon which . . . [the] objection is based'" (citation omitted). O'Rourke, supra at 818. [Note 4] Nonetheless, this "requirement . . . is no more burdensome than court rules in other areas of the law requiring a plaintiff to assert with specificity in his complaint (or other pleading) allegations which, if proved, would entitle him to prevail." Id. Since the effective date of Rule 27A of the Rules of the Probate Court in 2000 -- which currently provides in relevant part that "[i]n all cases not governed by the [Mass. R. Dom. Rel. P.], depositions and discovery shall be governed by Rules 26 through 37 of the [Mass. R. Civ. P.]" -- "[m]odern discovery rules are now available in all probate matters." O'Rourke, supra at 819 n.9, quoting S.M. Dunphy, Probate Law and Practice § 23.8, at 119 (Supp. 2005). [Note 5]

 A motion to strike an affidavit of objections is one mechanism for summary resolution of a will contest. As the Supreme Judicial Court said in construing the former rule 16, "[a] motion to strike an affidavit of objections is similar in some ways to a motion to dismiss a complaint in a civil action under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974)." O'Rourke, 446 Mass. at 817-818. In ruling on a motion to strike an affidavit of objections, the motion judge must take the sworn assertions made in the affidavits of objection as true and determine whether they aver "allegations, in verified form, of specific subsidiary facts that, if proved by a preponderance of the evidence, state grounds for contesting the will offered for probate." Brogan v. Brogan, 59 Mass. App. Ct. 398, 400 (2003), abrogated on other grounds by 

 Page 869 

O'Rourke, supra at 820.

 As the Supreme Judicial Court has explained, the motion to strike is not "the only way to dispose of a will contest summarily." O'Rourke, 446 Mass. at 818. Since the effective date of Rule 27B of the Rules of the Probate Court in 2000, "[s]ummary judgment may be granted in accordance with the provisions of [Mass. R. Civ. P. 56, 365 Mass. 824 (1974)]." O'Rourke, supra at 819. The availability of summary judgment in will contests has been read by the Supreme Judicial Court to have implications for the procedure to be followed in evaluating a motion to strike an affidavit of objections. Specifically, although an affidavit of objections must be sworn, the Supreme Judicial Court has made clear that the question on a motion to strike is not whether the affidavit raises a genuine issue of material fact sufficient to go to trial. "Now that motions for summary judgment are available in will contests, applying a summary judgment standard to . . . affidavits [of objections] may cause needless confusion. Judges ruling on . . . motions [to strike such affidavits] should ensure only that the contestants have met the standards specified in [the former rule 16, now codified in the statute]." O'Rourke, supra at 818 n.6. Indeed, "[t]here may be cases where the contestant's affidavit of objections clearly sets forth sufficient facts to satisfy" the standard articulated in § 1-401 (e), "although discovery or the proponent's own affidavits . . . may provide a basis for summary judgment." [Note 6] O'Rourke, supra at 820.

 Our review of the motion judge's order striking the affidavits of objections is de novo. See Cusack v. Clasby, 94 Mass. App. Ct. 756, 758 (2019). And in this case, in reviewing the order striking the affidavits, we need look only at the allegation of improper execution of the will in order to determine that the affidavits of objections should not have been struck. Although the allegation of improper execution was inartfully made, given the face of the will and the limited information to which any person who was not present at its execution could have attested, we think the allegation

 Page 870 

 was sufficient to defeat the motion to strike.

 "The burden of proving proper execution rested upon the [will's] proponent and required her to prove that all the formal requirements of the statute were met." Goodwin v. Riordan, 333 Mass. 317, 318 (1955). General Laws c. 190B, § 2-502, provides as follows:

"(a) Except as [otherwise provided], a will shall be:

"(1) in writing;

"(2) signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction; and

"(3) signed by at least [two] individuals, each of whom witnessed either the signing of the will as described in paragraph (2) or the testator's acknowledgment of that signature or acknowledgment of the will.

"(b) Intent that the document constitute[d] the testator's will can be established by extrinsic evidence."

Although it presents an unusual circumstance, the statute does provide for an individual other than the testator to sign a will in the testator's name. And that is what the face of the will indicates was done here. The witnesses' attestations, however, did not say that an individual other than the testator signed for the testator. They stated, rather, that "the [t]estatrix signed and executed this instrument as her last [w]ill in the presence of each of us."

 This does not mean the proponent cannot prove that the will was properly executed, but it does mean that the proponent is not entitled to the presumption of "compliance with signature and other requirements of execution," G. L. c. 190B, § 3-406 (b), provided when a testator utilizes the mechanism in G. L. c. 190B, §?2-504, for the creation of a self-proved will. A will in which the witnesses attest to events that are not those the will itself describes as having been undertaken in executing the will cannot be self-proving. [Note 7] The proponent therefore must put forward some additional proof. See G. L. c. 190B, § 3-406 (a) ("If evidence 

 Page 871 

concerning execution of an attested will which is not self-proved is necessary in contested cases, the testimony of at least [one] of the attesting witnesses, if within the [C]ommonwealth, competent and able to testify, is required. Due execution of a will may be

 Page 872 

 proved by other evidence"). Cf. Farrell v. McDonnell, 81 Mass. App. Ct. 725, 730 (2012) (will proved to have been properly executed where testator acknowledged previous signature to witnesses who did not see her actually sign); Matter of the Estate of King, 98 Mass. App. Ct. 332, 335-336 (2020) (death of all attesting witnesses does not defeat validity of will, which may be proved valid under § 3-406 [a] by extrinsic evidence).

 In light of our conclusion, we need not address the sufficiency of the affidavits with respect to the objectors' claims of undue influence and lack of testamentary capacity. Nor need we evaluate the propriety of the motion judge's determination not to rule on the motions with respect to discovery prior to ruling on the motion to strike. Before trial, however, the objectors should be permitted expeditiously to complete discovery, including through the entry of a temporary order by a judge of the Probate and Family Court if that is necessary. In the interest of avoiding piecemeal litigation, we note that, as the objectors have argued, it has long been held in this Commonwealth that an attorney may testify without violating the attorney-client privilege "in regard to what was said to [her] by [the testator], when the latter came to see [her] in regard to drawing the will." Doherty v. O'Callaghan, 157 Mass. 90, 91 (1892).

 Conclusion. The decree is vacated, and the case is remanded for further proceedings consistent with this opinion. 

So ordered.

FOOTNOTES
[Note 1] Around the same time, it appears that Coccoro also responded to the document request. 

[Note 2] There was also a motion to strike the notice of appearance filed on behalf of Wilson. It is undisputed that Wilson did not file a notice of appearance and objection with the Probate and Family Court prior to the citation deadline. In light of his disposition of the motion to strike, the motion judge did not address this motion. In light of our disposition of this matter, we do not do so either. On remand, should Coccoro choose to press the motion, it may be litigated in the first instance in the trial court. 

[Note 3] The former rule 16, concerning affidavits of objections and motions to strike, provided in relevant part as follows: 

"(a) If any person who has filed an appearance pursuant to General Probate Rule 2 on a petition for the probate of a will fails to file a written affidavit of objections to the petition, stating the specific facts and grounds upon which the objection is based, within thirty (30) days after the return day (or such other time as the court, on motion with notice to the petitioner, may allow), the court may, upon its own motion or on motion of the petitioner, the guardian ad litem (if any), or any person whose appearance is on file (with notice to any person whose appearance is on file and, if applicable, the guardian and petitioner), order the appearance struck.

"(b) If an affidavit of objections fails to comply with the requirements of the foregoing section (a), such affidavit of objections and the appearance of the party filing such affidavit of objections may be struck on motion with notice in the manner provided in the foregoing section (a) at any time after the filing of such affidavit of objections."

[Note 4] Neither party argues that the adoption of the statute and the amendment removing the related language from the former rule 16, under which all the prior appellate cases discussing this procedure were decided, worked any change in either the substance or procedure surrounding affidavits of objections or motions to strike such affidavits. 

[Note 5] Although in light of the basis of our decision today we need not decide the precise relationship between discovery and the timing of resolution of motions to strike affidavits of objections, with respect to motions for summary judgment the Supreme Judicial Court observed in O'Rourke that the rule allowing motions for summary judgment in will contests "additionally allows a will contestant who objects to the timing of a motion for summary judgment to make the tactical decision whether to seek a continuance 'to permit affidavits to be obtained or depositions to be taken or discovery to be had.' Mass. R. Civ. P. 56 (f). See Tetrault v. Mahoney, Hawkes, & Goldings, 425 Mass. 456, 458 (1997)." O'Rourke, 446 Mass. at 820 n.12. 

[Note 6] Under the former rule 16, the Supreme Judicial Court explained that where summary judgment is allowed, "it is appropriate for the judge both to enter summary judgment against the contestant under rule 27B and to strike the contestant's affidavit of objections and appearance under rule 16 (b). Although summary judgment is now available in will contests, the judge's striking the contestants' affidavits of objections and appearance remains a procedural prerequisite for the will to proceed to probate." O'Rourke, 446 Mass. at 821. We may assume the same remains true with respect to an affidavit of objections and appearance under the statute. 

[Note 7] General Laws c. 190B, § 2-504, sets out sample language for the creation of a self-proved will, but the language obviously must be tailored to the actual facts that occurred and were witnessed in order for a will to be entitled to the safe harbor the statute provides. The statute reads as follows: 

"(a) A will may be simultaneously executed, attested, and made self-proved, by acknowledgment thereof by the testator and affidavits of the witnesses, each made before an officer authorized to administer oaths under the laws of the [S]tate in which execution occurs and evidenced by the officer's certificate, under official seal, in substantially the following form:

"I, ____________, the testator, sign my name to this instrument this ____ day of _______, and being first duly sworn, do hereby declare to the undersigned authority that I sign and execute this instrument as my will and that I sign it willingly (or willingly direct another to sign for me), that I execute it as my free and voluntary act for the purposes therein expressed, and that I am 18 years of age or older, of sound mind, and under no constraint or undue influence.

"____________________

 Testator

"We, ____________, ____________, the witnesses, sign our names to this instrument, being first duly sworn, and do hereby declare to the undersigned authority that the testator signs and executes this instrument as [his] [her] will and that [he] [she] signs it willingly (or willingly directs another to sign for [him] [her]), and that each of us, in the presence and hearing of the testator, hereby signs this will as witness to the testator's signing, and that to the best of our knowledge the testator is 18 years of age or older, of sound mind, and under no constraint or undue influence.

"____________________

 Witness

"____________________

 Witness

"The State of ____________

"County of _________________

"Subscribed, sworn to and acknowledged before me by ____________, the testator, and subscribed and sworn to before me by ____________, and ____________, witness, this ____ day of _______.

"(Seal)

"(Signed) ____________________

"(Official capacity of officer)"

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.