NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-901

IN THE MATTER OF THE ESTATE OF BRUCE F. MILLER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Misop Baynun appeals from a decree and order of formal probate, arguing that the judge erred in allowing the motion by the petitioners to (1) strike Baynun's three notices of appearance and objection dated January 27, 2020, February 7, 2020, and August 10, 2020, and (2) appoint the petitioners as personal representatives.[1] We affirm.

Baynun's father, Bruce Miller, died on November 28, 2019. Following Miller's death, a copy of his will dated January 24, 2006, was found among his personal effects. The will appointed Miller's two nephews, Bruce Hiltunen and Robert Hiltunen (the petitioners), as executors, and left Miller's estate to his two sons as follows:

"1. I give all such property to my children, Jeffrey Martin Miller and Scott Douglas Miller a.k.a. Misop Baynum

---

[1] Although Baynun states in his brief that his appeal is joined by his mother, Sandra Miller, Miller did not file a notice of appeal and is not a party to this appeal.

[sic], in equal shares, however all such property shall be held in TRUST, in accordance with the provisions herein.

"A. It is my desire to provide for and/or assist in my children's retirement, and hereby appoint my nephews, Bruce Hiltunen and Robert Hiltunen, JOINTLY as trustees. Said TRUSTEES shall hold, manage, invest, reinvest, administer, and eventually terminate and distribute the proceeds in accordance with my wishes as stated above. The TRUSTEES shall be paid from the trust $200.00 (Two Hundred Dollars) each, per year.

"B. Distributions under the TRUST shall be made to my children, equally, beginning on March 8, 2023 and shall be made at a rate of 10% (Ten Percent) per annum based upon the total assets held in trust."

On January 9, 2020, the petitioners filed a petition to admit the will to formal probate and for appointment as personal representatives of the estate. The petitioners also sought authority to conduct a search of Miller's safe deposit box to locate the original will. On January 27, 2020, Baynun filed a motion to have himself appointed special personal representative for purposes of accessing Miller's safe deposit box to search for an original will.

Also on January 27, 2020, Baynun filed a notice of appearance and objection, together with an affidavit asserting that the copy of the will found among Miller's personal effects was an "invalid will."[2] More specifically, Baynun claimed that the copy of the will was invalid because (1) it was not an original; (2) the witnesses' attestation clause was not written

_____

[2] This was not docketed by the Register until February 5, 2020.

2

in the first person; (3) it was "fraudulent" because "will" was misspelled as "wil1" in the attestation; and (4) there was a double space in the attestation clause.  Baynun also claimed that although Miller "was very intelligent and often very sociably pleasant, he was regarded to not be of sound mind as his depressive paranoia affected his judgment severely, possibly up until the last three weeks of his life, when it is believed his eyes were open[]ed."

Publication pursuant to the citation on petition for formal adjudication was made on January 30, 2020, in the Quincy Sun, and was mailed on January 22, 2020, to (among others) Miller's two sons.  The return date on the citation was February 12, 2020.  A judge of the Probate and Family Court appointed one of Miller's nephews, Robert Hiltunen, as special personal representative with authority limited to conducting a search of Miller's safe deposit box to search for the original will, in the presence of his attorney and Miller's two sons.  That search located the original will, which was the same as the copy previously filed with the court.  The original will was filed with the court on February 13, 2020.

On February 7, 2020, Baynun filed another notice of appearance and objection, identical to his previous filing.[3]

_____

[3] This second appearance and objection was docketed on February 11, 2020.

Thereafter, on August 10, 2020, Baynun filed a third notice of appearance and objection.[4]  The third notice of appearance and objection was untimely because it was filed more than thirty days after the return date.  See G. L. c. 190B, § 1-401 (e).

On April 23, 2020, the petitioners moved to strike Baynun's notices of appearance and objection.  After hearing, the motion was allowed on August 11, 2020, and the petitioners were appointed as personal representatives of the estate.  It is these rulings that are before us now.

Baynun makes several arguments on appeal.  First, he argues that his right to religious freedom is infringed by appointment of executors who may not hold his same religious beliefs or invest the estate's assets in a way that is consistent with his religious beliefs.  Second, he argues that the attestation provisions of the will did not sufficiently track the language for self-proved wills contained in G. L. c. 192, § 2, as in effect prior to St. 2008, c. 521, § 12, nor was the will executed under seal as required under that statute.  Third, Baynun argues his father lacked testamentary capacity.  Fourth, Baynun argues that his father was under undue influence by the petitioners, as demonstrated by deviation from the requirements of G. L. c. 192, § 2.  Fifth, Baynun argues that the petitioners

---

[4] This was docketed on August 17, 2020.

4

have mismanaged the estate by not timely delivering title to an automobile, by not providing a full accounting, and by not disclosing to him before his father's death that they were named as executors in the will. Finally, Baynun argues that the judge should have exercised "authority in this case to encourage the development of maximum self-reliance and independence of the [d]ecedent's two sons who are also beneficiaries."

We begin by noting that many of Baynun's arguments on appeal were not raised in either of his two timely notices of appearance and objection. We do not consider any issue raised for the first time on appeal, as any such issues have been waived. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006) ("issue not raised or argued below may not be argued for the first time on appeal" [citation omitted]). Nor do we consider any issue raised for the first time in Baynun's third notice of appearance and objection, since it was properly struck as untimely. With these caveats, we turn to Baynun's objections as presented in his first two notices of appearance and objection, which we review de novo. See Matter of the Estate of Nevers, 100 Mass. App. Ct. 861, 869 (2022).

First, Baynun objected that the copy of the will found among Miller's personal effects was not the original and therefore should not be admitted to probate. As the judge correctly noted, this objection was mooted by the discovery of

5

the original will in Miller's safe deposit box and its subsequent filing with the court.

Second, Baynun objected to the will as "invalid" or "fraudulent" on the grounds that the witnesses' attestation clause was not written in the first person, the word "will" was spelled "wil1" in the attestation, and there was a double space in the attestation clause.  Together, Baynun argues that these irregularities mean that the will did not satisfy G. L. c. 192, § 2, in effect in 2006 when the will was executed.[5]  To begin with, we note that Baynun conflates the concepts of the validity of a will with the question whether the will is self-proved.  A will may be valid even if not self-proved.  Indeed, to be properly executed in 2006, a will needed only to meet the requirement of G. L. c. 191, § 1, as in effect prior to St. 2008, c. 521, § 10, that it be signed before two competent attesting and subscribing witnesses.[6]  Baynun did not, and does not, allege that the requirement was not met.

---

[5] Baynun did not cite to G. L. c. 192, § 2, below, but pointed instead to the requirements for self-proved wills contained in G. L. c. 190B, § 2-504, which was not enacted until 2008 as part of the Massachusetts Uniform Probate Code.

[6] The statute provided, "Every person eighteen years of age or older and of sound mind may by his last will in writing, signed by him or by a person in his presence and by his express direction, and attested and subscribed in his presence by two or more competent witnesses, dispose of his property, real and personal, except an estate tail, and except as is provided in this chapter and in chapters one hundred and eighty-eight and

6

In any event, none of the three supposed irregularities raised by Baynun has any merit. As to the use of the third person in the attestation, we note that the attestation language of the will tracks in all pertinent respects that contained in G. L. c. 192, § 2, which, as the statute itself stated, needed only be "substantially" tracked. As to the presence of an extra space and a mistyped letter "l," we need note only that neither rises to the level of stating a ground for contesting a will offered for probate. See Matter of the Estate of Nevers, 100 Mass. App. Ct. at 868 ("In ruling on a motion to strike an affidavit of objections, the motion judge must take the sworn assertions made in the affidavits of objection as true and determine whether they aver 'allegations, in verified form, of specific subsidiary facts that, if proved by a preponderance of the evidence, state grounds for contesting the will offered for probate'" [citation omitted]).

Finally, Baynun's naked assertion that Miller suffered from depressive paranoia was not sufficient to raise a question that Miller lacked testamentary capacity at the time he executed his will. See Haddad v. Haddad, 99 Mass. App. Ct. 59, 68-69 (2021) (elements of testamentary capacity). There was nothing to indicate that Miller did not understand the will or that he did

_____

one hundred and eighty-nine and in section one of chapter two hundred and nine."

7

not know the natural objects of his bounty.  Indeed, the will itself demonstrates the contrary in that Miller left his estate to his two sons equally.

For these reasons, we affirm the August 11, 2020, decree and order of formal probate allowing the petitioners' motion to strike Baynun's notices of appearance and objection and to appoint them as personal representatives of Miller's estate.  In addition, we allow the petitioners' request for attorney's fees and costs on appeal.  In accordance with the procedure specified in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), the petitioners may, within fourteen days of the issuance of the rescript of this decision, submit an application for appellate attorney's fees and costs with the appropriate supporting materials. Baynun shall have fourteen days thereafter to respond.

So ordered.

By the Court (Wolohojian, Shin & Ditkoff, JJ.[7]),

Joseph F. Stanton

Clerk

Entered:  October 19, 2023.

---

[7] The panelists are listed in order of seniority.

8